Our statutes not only do not provide to the contrary, but they indicate a very broad policy, as evidenced by a liberal right of assignment (articles 569, 570, Rev. Civ. Stat. of 1925), and especially article 5506 (5671), concerning liens providing:

"Nothing in this title shall be construed or considered as in any manner impairing or affecting the right of parties to create liens by special contract or agreement, nor shall it in any manner affect or impair other liens arising at common law or in equity, or by any statute of this state, or any other lien not treated of under this title."

The decisions are equally liberal in this respect. Richardson v. Washington, 88 Tex. 344, 31 S. W. 614; McMenamy, etc., Co. v. Dawley, 183 Mo. App. 1, 165 S. W. 831.

[3] Now, under the facts certified, whether Thompson was to be paid his rentals in cotton or cash, or partly in cotton and partly in cash, the right to receive such payment in any event is property subject to sale and assignment, and likewise subject to chattel mortgage. This being true, we think question No. 1 should be answered that the mortgage was valid.

[4] In answer to question 2, it must be held that Bowyer was not necessarily the owner of the rents for 1924, merely because he was the owner of the land when such crops were harvested and the rentals became due. It is well settled that crops may be segregated from the land by any definite act showing such intention, thereafter becoming personalty, and as such assignable at will. In the absence of such segregation by the owner, such rentals do go with the land.

[5] What we have said under question 1 answers question 3. Of course, if Thompson, the owner of the land at the time, had such property in the crop rentals that he could mortgage the same, then such mortgage and its registration were valid. His act in executing this instrument amounted to a segregation of the crops and rentals from the land so as to make them personalty subject to chattel mortgage and registration, and, answering 4, this would constitute constructive notice to subsequent purchasers of the land of the lien on such rentals.

[6] To question 5 we answer the owner of land under rental to another may, upon sale of such land, reserve by verbal agreement the rentals thereafter to become due. This is a segregation by mutual agreement of the rentals from the land. Such segregation does not involve the statute of frauds in any way. Every chattel mortgage or sale of a growing crop is upheld on this theory.

[7] We have already stated that crop rentals may be assigned, but it does not follow that the first assignee acquires the better right without respect to notice. But this is academic. It has no controlling effect in this case. As we understand the certificate, it is not a question of assignment of the rentals to become due. Of course a pure assignment may be executed by the owner of the land, whether the same be for money rentals or a specific portion of the crop to be raised. This right to make an assignment by analogy includes the right to mortgage.

[8] Finally, any answer we might give to question 7 is probably immaterial; nevertheless, the appellee, W. McD. Bowyer, under the facts stated in the certificate, could not, by purchasing the $500 note executed by Thompson in the purchase of the land, and secured by a lien upon the crop rentals for 1924, keep alive such lien as against Thompson's oral reservation of such rents in his sale to Beardon. We base this statement upon the fact shown in the certificate that, after Bowyer had received the deed to the land and had given Beardon a check for the cash payment, but before the check had been paid, he (Bowyer) had actual notice of the verbal reservation made by Thompson, in time to enable him to have stopped payment if he had so desired.' He thus assented to such reservation, and knew he was not to get the 1924 rentals.

So that we recommend the questions certified be answered as above shown.

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.

---

### GIBSON v. STATE.  (No. 10608.)

(Court of Criminal Appeals of Texas. ·Feb. 9, 1927.)

Criminal law ⚖=1097(5)—In absence of statement of facts, whether court erred in refusing special charge could not be considered on appeal (Code Cr. Proc. 1925, art. 666).

In prosecution for theft, refusal to give charges requested, some of which were intended to correct alleged errors in main charge on subject of accomplices, could not be considered, in absence of statement of facts, as Code Cr. Proc. 1925, art. 666, bars reversal because of errors in charge, unless error complained of is calculated to injure defendant's rights or unless it appears from record that defendant has not had fair and impartial trial.

Appeal from District Court, DeWitt County; John M. Green, Judge.

R. C. Gibson was convicted of theft, and he appeals. Affirmed.

See, also, 103 Tex. Cr. R. 536, 281 S. W. 567, 283 S. W. 795.

W. T. Bagby, of Hallettsville, and R. J. Waldeck, of Cuero, for appellant.

Sam D. Stinson, State's Atty., of Austin. and Robt. M. Lyles, Asst. State's Atty., of Groesbeck, for the State.

HAWKINS, J. Conviction is for theft of property over the value of $50; punishment being five years in the penitentiary.

No statement of the facts proven are found in the record, and no bills of exception appear save those complaining of the refusal of a number of special charges. Several of the requested charges are instructions regarding accomplice witnesses, and were intended to correct what was conceived to be errors in the main charge upon that subject.

Without having before us the facts in a given case it is impossible to appraise objections to charges given or complaint because of refused instructions. Article 666, C. C. P. 1925, bars reversal because of errors in a charge, unless the error complained of was calculated "to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Manifestly this court is in no position to say whether those provisions are applicable without knowledge of the facts, unless it be in exceptional cases, which is illustrated by Davis v. State. (Tex. Cr. App.) 287 S. W. 264, and authorities therein cited. The present case does not furnish one of the exceptions.

The judgment is affirmed.